RYAN ALEXANDER
Nevada Bar No. 10845
RICHARD ENGLEMANN
Nevada Bar No. 6965
RYAN ALEXANDER, CHTD.
3017 West Charleston Blvd., Ste. 10
Las Vegas, NV 89102
Phone: (702) 868-3311
Fax: (702) 822-1133
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JULIA LOPEZ, an Individual; GUSTAVO ELIZONDO, an Individual; MARY IMAN, an Individual and as Parent and Guardian of I. I., a Minor; <br><br> Plaintiffs, <br><br> v. <br><br> LAS VEGAS METROPOLITAN POLICE DEPARMENT, a Political Subdivision of the State of Nevada; NORTH LAS VEGAS POLICE DEPARMENT, a Political Subdivision of the State of Nevada; and DOES I-X, Unknown Persons or Entities; <br><br> Defendants. | Case No.: 2:24-cv-628 <br><br> **COMPLAINT** <br><br> **CLAIMS FOR RELIEF:** <br><br> **(1) Violation of Civil Rights Under 42 U.S.C. §1983** <br> **(2) Violation of Civil Rights Under 42 U.S.C. §1983 – Monell Liability** <br> **(3) Violation of Nevada Constitution** <br> **(4) Negligence** <br> **(5) Intentional Infliction of Emotional Distress** <br> **(6) False Imprisonment** |

COME NOW Plaintiffs JULIA LOPEZ, ("LOPEZ"), GUSTAVO ELIZONDO ("ELIZONDO") MARY IMAN ("IMAN"), an Individual and as Parent and Guardian of I. I., a Minor (collectively "Plaintiffs"), by and through their attorneys of record, Ryan Alexander, Esq. and Richard Englemann, Esq. of RYAN ALEXANDER, CHTD., as individuals, for their complaint against Defendants LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD"), a Political Subdivision of the State of Nevada, NORTH LAS VEGAS POLICE DEPARMENT ("NLVPD"), a Political Subdivision of the State of Nevada, and DOES I through X, inclusive (collectively, "Police", "Defendants"), and hereby complain, allege and state as follows:

## PARTIES

1. Plaintiff JULIA LOPEZ is an individual residing in Clark County, Nevada.

2. Plaintiff GUSTAVO ELIZONDO is an individual residing in Clark County, Nevada.

3. Plaintiff MARY IMAN is an individual residing in Clark County, Nevada.

4. Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT is a Political Subdivision of the State of Nevada, located in Clark County, Nevada.

5. Defendant NORTH LAS VEGAS POLICE DEPARTMENT is a Political Subdivision of the State of Nevada, located in Clark County, Nevada.

6. The true names and capacities, whether individual, corporate, associate or otherwise of other Defendant hereinafter designated as DOES I-X, inclusive, who are in some manner responsible for injuries described herein, are unknown at this time. Plaintiff, therefore, sues said Defendant by such fictitious names and will seek leave of the Court to amend this Complaint to show their true names and capacities when ascertained.

7. The Defendants are jointly and severally liable for each Defendant's actions.

**VENUE AND JURISDICTION**

8. Jurisdiction is proper in the District of Nevada as Plaintiff is bringing this action pursuant to 42 U.S.C. §1983.

9. Supplemental jurisdiction over state law claims is proper pursuant to 28 U.S.C. §1367(a).

10.    Venue is proper under 28 U.S.C. §1391(c) as the incident for which Plaintiff complains and for which Defendants are liable arises out of actions of LVMPD in Clark County, Nevada.

**GENERAL ALLEGATIONS**

11.    On or about March 31, 2022, Plaintiff JULIA LOPEZ owned a home at 2736 Flower Avenue, North Las Vegas, Nevada 89030 ("Flower Home").

12.    Nine family members, including LOPEZ' partner GUSTAVO ELIZONDO, LOPEZ' daughter IMAN, IMAN's husband and five young children, resided at the Flower Home.

13.    LOPEZ has an adult son, Joshua Sanchez-Lopez ("Joshua"), who did not reside at the Flower Home as of 2022. Joshua is 6 foot, 1 inch tall, and weighs approximately 200lbs.

14.    In the evening of March 31, 2022, ELIZONDO was ill and in bed. IMAN was in the Flower Home with I.I. and her four other children. LOPEZ and IMAN's husband were out of the home at work.

15.    Around 7:30pm, ELIZONDO, IMAN and her children were surprised by LVMPD and NLVPD

2

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

and removed from their home by an army of armed officers, including LVMPD S.W.A.T. officers.

16. With LVMPD helicopters overhead, squadrons of officers – estimated to be over 50 officers – removed Plaintiffs and their family from the home and separated the children from them. Their cars filled several streets while drones, robots and armored vehicles descended on the Flower Home.

17. LVMPD detective Derek Jappe, Badge P#9992 ("Jappe") was on duty for LVMPD and brought an unsigned search warrant purportedly issued on March 31, 2022, by Judge Letizia of Las Vegas Township Justice Court to search the Flower Home for Joshua Sanchez-Lopez. *See Duplicate Original Search Warrant*, Ex. 1.

18. The Search Warrant merely listed a home residence and that it was for the person of Joshua Sanchez-Lopez and listed the address - no further detail to the scope of the search warrant was given, and it did not disclose that multiple departments would converge with military-grade combat equipment on a family of nine with five young children, including infants and a baby. *Id*.

19. The Warrant further denied that there were minors in the Flower Home when the raid began – minors was crossed out by hand - only listing two (2) "persons of adults" as present. *Id*.

20. Upon information and belief, Joshua was sought [along with two other individuals] in connection with the 2019 fentanyl drug overdose death of a woman in Nye County, Nevada.

21. Plaintiffs were not suspects of any crime.

22. At all relevant times, Joshua was not at the Flower Home, and it was not his residence.

23. As Police Defendants prepared for a barricade, siege and armed breach of the Flower Home, Plaintiffs pleaded with Police officers that Joshua was not present and had not been present.

24. Police officers lied to ELIZONDO and IMAN and said - yelling and swearing - that they had surveillance that Joshua had entered the Flower Home only "20 minutes" before.

25. While detaining Plaintiffs, Defendants made unreasonable accusations against Plaintiffs that there were secret passage(s), hidden basement and an attic in the home – and demanded to know their locations.

26. A small, 1,268 square foot, 3-bedroom desert rambler built in 1958, the Flower Home has no basement, attic or any hidden passages or escape routes.

27. In the confusion, IMAN's two year old daughter was not initially taken from the home, and

3

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

Defendants refused to allow IMAN to remove her (or to even accompany IMAN into the home to remove her); she awoke amid the police raid and wandered out on her own, surrounded by armed police.

28.    ELIZONDO, IMAN and her children were taken about two blocks away and boarded onto a bus where they were held over seven hours, until approximately 3am the next morning.

29.    Instead of entering and searching the home for Joshua in the few minutes it would take for a 'sweep' search, Defendants fortified their position around the home and began with robots and drones, they began to assault the Flower Home with flash bang and tear gas grenades.



30.    Tear gas grenades were set off in every room and closet.

31.    The grenades punched holes in the drywall on impact, of floors and ceilings, and tear gas grenades left fluorescent pink residue that was a toxic irritant and corrosive to the touch.

32.    These grenades permanently ruined the Plaintiffs' carpets, furniture, appliances, baby furniture including strollers, walkers and high chair, clothing and shoes for the family of nine, bedding and penetrated nearly every porous surface and fabric in the home.



33.    Defendants then began officer entry and used

 

tools, battering rams, axes or saws, *inter alia*, to:

  a.   Smash most of the glass in the structure, including all but two exterior windows of the home, completely shatter interior sliding glass doors around the bar area, shatter mirrors;

  b.   tear down all window screens and both exterior and interior window framing;

  c.   punch holes in the wood-look laminate flooring throughout the Flower Home;

  d.   tear open and damage cabinets in the kitchen, bar area and bathroom;

  e.   cut large square holes in the ceiling and down from the roof while looking for an attic;

  f.   damage the fridge, sweep small appliances off counters to the ground;

  g.   punch holes in the interior and exterior walls;

  h.   cut open the air conditioning system and vents, pried open vent registers;

  i.   break down the kids' bunk beds;

  j.   punch holes in furniture and cut it apart;

  k.   threw chairs and bar stools about the home;

  l.   tore curtains and blinds from the windows;

  m.   pried open various wall trim inside;

34.   While looking for a 6'1", 200lb. man, Defendants also smashed, dismantled, flipped over, dumped out and ruined dressers, drawers, and small storage spaces throughout the home – no matter how unreasonable it was to think Joshua would be hiding from a grenade assault and S.W.A.T. breach entry in a child's clothes dresser.

35.   ELIZONDO had a recreational vehicle ("RV") parked in the driveway.

36.   Defendants smashed the windows of the RV, grenaded the inside, and then rammed it open and continued their swath of destruction to the interior of the RV, ruining cabinets, doors and storage areas.

37.   While removing the Plaintiffs from the Flower Home and holding them several blocks away on a bus, Defendants repeatedly accused Plaintiffs of harboring Joshua and made repeated false statements that Joshua had been seen at the home that evening.

38.   By the time they ended around 3am the next morning, Defendants spent over seven hours destroying the Flower Home, the RV, and Plaintiffs' personal property.

39.   Defendants with an armed team of over 50 officers could have safely executed the search warrant

for a large male in a 1,268ft. home in several minutes by moving and opening doors, cabinets, windows and furniture - without permanently damaging them or coating them with poisonous chemicals.

40. From the miserable devastation of every room of their humble home it is obvious that Defendants went beyond a mere warrant search and sweep for a large male to a malicious rampage intended to destroy LOPEZ, ELIZONDO and IMAN's belongings and possessions.

41. Defendants left a Warrant Return indicating that they took no property from the Flower Home. *Return*, Ex. 2.

42. Defendants' misguided operation based on the false statements of law enforcement officers ruined the Plaintiffs' family of nine had their home and most of their hard-earned possessions and traumatized the entire family.

43. Due to the structural and window damage to the Flower Home, and the toxic residue of the tear gas grenades, the Flower Home was left uninhabitable; Plaintiffs could not reside in the Flower Home for over three months of renovations carried out by exhausting their earnings and savings, and from the help of friends.

44. As noted, all carpeting, bedding, fabric furniture, child furniture, and much of their clothing and shoes could not be salvaged.

45. Then only four, minor Plaintiff I.I. was traumatized by the incident and still views the police in total fear, as they saw the Police defendants hurt their family by surprising them with a small army, set grenades off in their home, yell at them with false accusations, destroyed their home and ruined I.I.'s clothing and toys.

46. Rather than tell the truth and admit their error in running a major, multi-department home breach on the wrong residence and needlessly ransacking Plaintiffs' home, Defendants continued to produce reports that Joshua was in the home at the commencement of the siege [writing that he *was* present, but somehow escaped], and have denied Plaintiffs' claims.

47. As a result of Defendants' tortious actions, Plaintiffs suffered property damage in excess of $120,000, physical and emotional injuries, pain, suffering and emotional distress, loss of employment and other economic losses to their damage in excess of $75,000.

//

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

6

**FIRST CLAIM FOR RELIEF**

*(Violation of Civil Rights Pursuant to 42 U.S.C. §1983 Against All Defendants)*

48.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

49.     As citizens and residents of the United States, Plaintiffs had constitutional rights to be protected from unreasonable search and search, deprivation of life, liberty and property – including bodily integrity – and to be free from unjustified pain and suffering, mental anguish and to live without threat to their personal safety while in the custody of Defendants LVMPD and NLVPD, as protected by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

50.     Defendants, and each of them, acted under color of state law and violated Plaintiff's rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution.

51.     Under the Fourth Amendment, Defendants' actions constitute an illegal search and seizure using an insufficient warrant; under the Fifth Amendment Defendants' actions constitute a taking of private property without due process or compensation.

52.     LVMPD and NLVPD, through their officials and agents, illegally searched Plaintiffs' residence using force and an insufficient search warrant based on incomplete or false information; used excessive force in execution of the search warrant, held Plaintiffs for over seven hours and destroyed Plaintiffs' personal and private property as a taking without compensation or due process, all in violation of their civil rights.

53.     LVMPD and NLVPD, through their officials and agents, intentionally performed illegal searches and seizures, used incomplete or false representations to the magistrate and used excessive force while holding the innocent Plaintiffs for over seven hours, following LVMPD and NLVPD policies, procedures and common practices.

54.     Defendants were acting under color of law as they raided Plaintiffs' home with a search warrant.

55.     However, Defendants' actions exceeded the authority of the unsigned Search Warrant purportedly issued under the authority of Las Vegas Township Judge Harmony Letizia.

56.     The Fourth Amendment contains an unambiguous requirement that a warrant "particularly describing ... the persons or things to be seized."

57.     Defendants did not list all the areas that Defendants destroyed as specific locations to be

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

7

searched.

58. The Search Warrant merely listed a home residence and that was for the person of Joshua Sanchez-Lopez and listed the address. No further detail to the scope of the search warrant was given, and certainly not that multiple departments would converge with military-grade combat equipment on a family of nine with five young children, including infants and a baby.

59. The Warrant did not disclose that there were also five minors in the Flower Home at the moment the raid began – minors was crossed out by hand - only listing two (2) "persons of adults."

60. The warrant did not list that they would search and destroy ELIZONDO's RV that was parked outside the home.

61. Defendants made representations that Joshua Sanchez-Lopez had just been seen at the Flower Home residence at the time of the warrant request, which was either intentionally false or stated with reckless disregard for the truth, as he was not at the Flower Home.

62. Thus, Defendants used false or misleading statements to Judge Letizia to obtain the warrant.

63. Defendant's actions exceeded the reasonable force needed to search the Flower Home and ELIZONDO's RV for Joshua Sanchez-Lopez.

64. Defendant's force and violence was excessive in that much of the damage was done to Plaintiffs' personal property where a large male could never hide; Defendants smashed holes throughout the furnishings, even small dresser drawers; Defendants sheared or pried open air vents coming from the air conditioner.

65. Defendants knew or should have known that Joshua Sanchez-Lopez was not present at Flower Home or ELIZONDO's RV, yet they engaged in hours-long destruction of the home out of spite against the Plaintiffs – this allegation is based on Defendants' repeated false accusations to ELIZONDO and IMAN that Joshua was still hidden in the home with the implication that ELIZONDO and IMAN were lying to hide Joshua.

66. Once Defendants had been proven wrong, they continued to ransack in a futile search of unreasonable destruction to try and search for physical evidence against Plaintiffs [of any crime] beyond the scope of the search warrant. This continued rummaging was unconstitutionally beyond the scope of the warrant.

67. Upon information and belief, in the case of the Nye County fentanyl overdose death in 2019 that was the basis of Sanchez-Lopez' warrant was not itself a violent crime, Sanchez-Lopez had already been taken into custody without incident for that investigation in 2020 [and upon information and belief, released], all without the massive use of force used in this incident. Which further demonstrates that this broad mobilization was unnecessary, and unconstitutional that Defendants used such tactics on the wrong home and innocent civilians.

68. It would have been clear to a reasonable officer that Defendants' conduct in unnecessary destruction of Plaintiffs' property was unlawful in this situation.

69. Defendants knowingly and voluntarily conspired, planned and executed actions that violated Plaintiffs' civil rights under the United States Constitution and Nevada Constitution.

70. LVMPD and NLVPD subjected Plaintiffs to their policies, patterns and practices of using insufficient or false information on warrants to execute search warrants with excessive force, of detaining private civilians not suspects while engaging in prolonged assaults on their residence, and of damaging private property about a residence being searched with no direct relationship to the warrant or the search for a person of the description listed.

71. LVMPD and NLVPD officers knew or had reason to believe that their actions in damaging the Flower Home and RV, detaining Plaintiffs, and destroying Plaintiffs' personal belongings were violations of Plaintiffs' civil rights.

72. As a result of the Defendants' Constitutional violations, and each of them, Plaintiffs were subject to an illegal seizure of the Flower Home and RV, seizure and destruction their personal property, and to being falsely imprisoned while the Flower Home and RV were raided.

73. Plaintiffs were injured as a proximate result of the foregoing wrongful acts of Defendants.

74. As a direct and proximate result of the breach of duty, Plaintiffs were caused to suffer property damage, pain and suffering, mental anguish and Plaintiffs were deprived of rights guaranteed by the Fourteenth Amendment of the United States Constitution, for damages in excess of seventy-five thousand dollars ($75,000.00).

75. Defendants are liable to Plaintiffs for breach of their duty as described herein and their violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. §1983, in an amount in excess of seventy-five

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

9

thousand dollars ($75,000.00).

76.    Plaintiffs were forced to retain RYAN ALEXANDER, CHTD. to prosecute this action and are entitled to an award of reasonable attorney's fees and costs of suit incurred herein.

## SECOND CLAIM FOR RELIEF

*(Violation of Civil Rights – Monell Liability - 42 U.S.C. §1983 Against All Defendants)*

77.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

78.    Plaintiff further alleges, upon information and belief that it is the policy, practice and custom of LVMPD and NLVPD police to tolerate and ratify the unlawful search and seizures, improper warrants, detention of civilians who are not suspects and unlawful destruction of property by its officers.

79.    LVMPD and NLVPD officials were the moving force behind the constitutional violations perpetuated by the Defendant officers.

80.    At all relevant times, LVMPD and NLVPD, through their officials and agents, maintained policies and customs of failing to adequately train, investigate, supervise, and discipline their officials, employees, and agents with respect to the unlawful search and seizures, improper warrants, detention of civilians who are not suspects and unlawful destruction of property.

81.    LVMPD and NLVPD, through their officials and agents, failed to adequately train, investigate, supervise, or discipline their officials, employees, and agents in, *inter alia*, the following areas:

    a.    Appropriately performing search and seizure, including appropriate procedure for search of residences for fugitives in a manner not to needlessly destroy the private property of innocent bystanders;

    b.    Respecting the civil rights of Nevadans, including right to be free from unreasonable search and seizure and due process for seizure or destruction of property;

    c.    Properly and appropriately applying for search warrants with specificity; and

    d.    Adequately training regarding limits of detention of those who are not suspects.

82.    LVMPD and NLVPD's failure to adequately train, supervise, investigate, and discipline their officials, employees, and agents in the above-mentioned areas resulted in the Individual Defendants

10

acting with unchecked authority and discretion and deliberate indifference to the rights of individuals within their custody and control, including Plaintiffs.

83. LVMPD and NLVPD, through their officials and agents, were aware that their policies and customs of failing to adequately train, investigate, supervise, and discipline their officials, employees, and agents would result in the constitutional violations and injuries stated herein.

84. Despite this, LVMPD and NLVPD, through their officials and agents, made conscious choices to maintain their policies and customs of failing to adequately train, investigate, supervise, and discipline their officials, agents, and employees in the above-mentioned areas for reasons peculiar to each Defendant, including, but not limited to, the pursuit of profit and political expediency. These choices were made with deliberate indifference to the constitutional rights of individuals within their custody and control.

85. Thus, LVMPD and NLVPD, through their officials and agents, knew of and consciously disregarded a known and obvious consequence of their policies and customs, resulting in the constitutional violations and injuries stated herein.

86. This inadequate training, investigation, supervision, and discipline was the direct and proximate cause of the constitutional violations and injuries suffered by Plaintiff, and LVMPD and NLVPD are liable to Plaintiffs for damages related to the same.

87. Further, at all relevant times, LVMPD and NLVPD, through their officials and agents, maintained constitutionally inadequate policies, customs, and procedures with respect to search and seizure from those who are not criminal suspects, proper disclosure for search warrants, regarding Nevada citizens in their custody, including *inter alia*:

    a. Instructing their officers illegal processes for search and seizure, including directing them to obtain vague or misleading warrants;

    b. Instructing their officers to violate the civil rights of Nevadans, to perform unreasonable searches and seizures of private property;

    c. Instructing their officers to violate the civil rights of Nevadans by excessive force and violence;

    d. Intentional ignorance of the limits of LVMPD and NLVPD jurisdiction;

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

11

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

e.  Intentional ignorance of the limits of search warrants issued by Justice Court magistrates;

f.  Use of illegal police force with military-style vehicles to barricade, raid and destroy private property; and

g.  Use of illegal police force and threat of continued detention to threaten and punish Nevada citizens.

88.  LVMPD and NLVPD's constitutionally inadequate policies, customs, and procedures caused the Individual Defendants to act with deliberate indifference to the rights of individuals within their operational areas, including Plaintiffs.

89.  LVMPD and NLVPD, through their officials and agents, were aware that their constitutionally inadequate policies, customs, and procedures would result in the constitutional violations and injuries stated herein.

90.  Despite this, LVMPD and NLVPD, through their officials and agents, made conscious choices to maintain their constitutionally inadequate policies and customs related to unlawful search and seizures, improper warrants, detention of civilians who are not suspects and unlawful destruction of property, for reasons peculiar to each Defendant, including, but not limited to, the pursuit of profit and political expediency. These choices were made with deliberate indifference to the constitutional rights of individuals within their custody and control.

91.  Thus, LVMPD and NLVPD, through their officials and agents, knew of and consciously disregarded a known and obvious consequence of their policies and customs, resulting in the constitutional violations and injuries stated herein.

92.  These constitutionally inadequate policies, customs, and procedures were the direct and proximate cause of the constitutional violations and injuries suffered by Plaintiffs, and LVMPD and NLVPD are liable to Plaintiffs for damages related to the same.

93.  Defendants are liable to Plaintiffs for breach of their duty as described herein and their violations of Plaintiffs' constitutional rights pursuant to 42 U.S.C. §1983, in an amount in excess of seventy-five thousand dollars ($75,000.00).

94.  Plaintiffs were forced to retain RYAN ALEXANDER, CHTD. to prosecute this action and are entitled to an award of reasonable attorney's fees and costs of suit incurred herein.

**THIRD CLAIM FOR RELIEF**

*(Violation of the Constitution of the State of Nevada)*

95.    Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

96.    The State of Nevada, along with its political subdivisions, waived its immunity from liability and consented to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons or corporations.

97.    At all relevant times, Defendants LVMPD and NLVPD are political subdivisions of the State of Nevada within the meaning of NRS 354.474.

98.    Article I, Section 8(2) of the Nevada Constitution states that no person shall be deprived of life, liberty or property without due process of law.

99.    Article I, Section 8(3) of the Nevada Constitution states that private property shall not be taken without just compensation.

100.   Article I, Section 18 of the Nevada Constitution states that Nevadans have the right, "to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but upon probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, or thing or things to be seized."

101.   At all times relevant hereto, the LVMPD and NLVPD officers violated the Constitution of the State of Nevada by causing Plaintiffs to be deprived of rights, privileges and immunities secured in the Constitution of the State of Nevada, as alleged herein, by failing to adhere to their oath of office.

102.   The Search Warrant and execution of warrant were in violation of Article I, Section 18, as the facially defective warrant was based on false information, the warrant was not specific enough as to the areas to be searched, and the search itself exceeded the limits of the warrant in violation of the Nevada Constitution.

103.   The taking and destruction of Plaintiffs' property was in violation of Article I, Section 8(2) and (3) of the Nevada Constitution as it was without due process and compensation.

104.   The detention of Plaintiffs during the search was in violation of Article I, Section 8(2) of the Nevada Constitution as it was without probable cause or due process and they were not criminal suspects.

105.   The actions of the LVMPD and NLVPD officers as alleged herein give rise to *respondiat superior* liability of LVMPD and NLVPD.

106.   As a direct and proximate result of Defendants' constitutional violations as alleged herein, Plaintiffs have sustained damages as alleged herein.

## FOURTH CLAIM FOR RELIEF

*(Negligence)*

107.   Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

108.   At all times mentioned herein, Defendants, and each of them, were subject to a duty of care to avoid causing unnecessary harm and distress to citizens in the exercise of the police function.

109.   The conduct of Defendants as set forth herein did not comply with the standard of care to be exercised by reasonable police officers or the policies and procedures of the LVMPD or NVLMPD.

110.   As a direct and proximate result of Defendants' negligence as herein alleged Plaintiffs have been damaged in an amount in excess of $75,000.00, the exact amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

*(Intentional Infliction of Emotional Distress)*

111.   Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

112.   The conduct of Defendant officers in detaining the Plaintiffs without probable cause while destroying their personal property and damaging the Flower Home and RV, was extreme and outrageous and done with the intent to cause Plaintiffs extreme emotional distress.

113.   The unlawful acts perpetuated by Defendants and each of them in intentionally inflicting emotional distress upon Plaintiff was the direct and proximate cause of Plaintiff suffering damages in an amount in excess of $75,000.00, the exact amount to be proven at trial.

//

14

**SIXTH CLAIM FOR RELIEF**

*(False Imprisonment)*

114.   Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

115.   Defendants' acts in detaining Plaintiffs without due process while destroying their home, RV and personal property over the course of seven hours, directly and indirectly resulted in Plaintiffs' freedom of movement to be confined.

116.   Plaintiffs were aware and conscious of their confinement, and were harmed by said confinement.

117.   Defendants' conduct was the direct and proximate cause of damages to Plaintiffs in excess of $75,000.00, the exact amount to be proven at trial.

…

**JURY DEMAND**

Within Fed. R. Civ. P., Rule 59, the Seventh Amendment to the Constitution of the United States, as well as Article 1, Section 3 of the Constitution of the State of Nevada, or as otherwise may be provided, Plaintiffs hereby demand a jury trial for each of their claims.

…

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, each individually and on behalf of others similarly situated pray for the following relief:

A.   Judgment in favor of Plaintiffs and against all Defendants, for damages in such amounts as may be proven at trial;

B.   Compensation for both economic and non-economic losses in excess of $75,000, including but not limited to loss of earnings, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

C.   Special Damages in an amount of be determined at trial;

D.   Punitive and/or exemplary damages in such amounts as may be proven at trial;

E.   Injunctive relief against all Defendants to effect change to Defendants' policies and procedures;

F.   Attorneys' fees and costs, including those under 42 U.S.C. § 1988;

G.   Pre- and post-judgment interest; and

15

H.  Any and all further relief, both legal and equitable, that the Court may deem just and proper.

Dated this 30th of March, 2024.                     RYAN ALEXANDER, CHTD.

_____
RYAN ALEXANDER
Nevada Bar No. 10845
3017 West Charleston Blvd., Ste. 10
Las Vegas, NV 89102
*Attorney for Plaintiff*

16

# EXHIBIT 1

Event # 220300129286

## DUPLICATE ORIGINAL SEARCH WARRANT
### N.R.S. 179.045

STATE OF NEVADA } ss.

The State of Nevada, to any Peace Officer in the County of Clark. Proof having been made before me by Detective Derek Jappe P#9992, by oral statements given under oath, that there is probable cause to believe certain evidence, to wit:

(__) _____

(__) _____

(__) _____

(__) _____

(1) Person of _JOSHUA SANCHEZ-LOPEZ_ , DOB _____ , SCOPE ID # _____

(2) Persons of adults or minors located at the premises at the time of the execution of the search warrant.

(__) Firearms to include handguns, shotguns and rifles, spent casings or live ammunition for the same, firearm accessories such as magazines or cylinders, firearm cleaning materials, and paperwork associated with the ownership of firearms.

(__) Epithelial cells from the mouth of _____ to be collected via Buccal Swab.

(__) Biological evidence, which may require a thorough, microscopic examination and documentation of the crime scene to discover trace evidence to include but not limited to fingerprints, blood, hair, fibers and bodily fluid samples.

(__) Controlled substances, narcotics and paraphernalia commonly associated with the smoking, injection and/or ingestion of controlled substances and/or narcotics as well as the distribution of controlled substances and/or narcotics.

(3) Limited items of personal property.

Demonstrating the crime(s) of _WANTED PERSON - OPEN MURDER, VIOLATION  LLS_ has / have been committed and said evidence is presently located via a knock and/or announce Search Warrant at _2736 FLOWER AVE_ Las Vegas, Clark County, Nevada, and as I am satisfied that there is probable cause to believe that said evidence is located as set forth above and based upon the statements of Detective Jappe there are sufficient grounds for the issuance of the Search Warrant.

You are hereby commanded to search and examine said premise(s) for said property and trace evidence, serving this warrant (anytime day or night) / (between 7 a.m. and 7 p.m.), and if the evidence/property is there, to seize it and leave a written inventory and make a return before me within 10 days. The attached recorded oral statement upon which this warrant is based is hereby incorporated by this reference as though fully set forth herein.

Dated this _31_ day of _MARCH_ , 20_22_ at _2213_ hours.

Judge _LETIZIA_

Signed by Detective Jappe acting on oral authorization of Judge _LETIZIA_

Endorsed this _____ day of _____, 20___

Judge _____

# EXHIBIT 2

2203 0013 9286

Page __1__ of __1__

# RETURN

(Must be made within 10 days of issuance of Warrant)

**The Search and Seizure Warrant authorizing a search and seizure at the following described location(s):**

2734 Pioneer Ave

was executed on _____

(month, day, year)

A copy of this inventory was left with _____

At place of search

(name of person or "at the place of search")

**The following is an inventory of property taken pursuant to the warrant:**

None

**This inventory was made by:** _____

(at least two officers including affiant if present. If person from whom property is taken is present include that person.)

LVMPD 718 (REV. 5-04)